THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ACEVES LOBATOS, et al. ) | |
| ) | |
| ) | No. 25 C 01223 |
| *Plaintiffs*, ) | |
| ) | Chief Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| ) | |
| KRISTI NOEM, in her official capacity as ) | |
| Secretary of Homeland Security, et al. ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Jose Aceves Lobatos and Angeles Sanchez Rubio brought these claims against Defendants Kristi Noem, Secretary of Homeland Security, and Andrew Davidson, Deputy Director, U.S. Citizenship Immigration Services ("USCIS"), in their official capacities, under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. Plaintiffs request that the Court direct USCIS to adjudicate Lobatos's I-918 Petition for U Nonimmigrant status and Rubio's Form I-918A derivative petition. Defendants move to dismiss, arguing that the Court lacks subject matter jurisdiction and, alternatively, that Plaintiffs fail to state a claim. For the following reason, the Court grants Defendants' Motion. [6].

**BACKGROUND**

I.  **Statutory Scheme: U Visa Petitions**

In 2000, Congress created the "U nonimmigrant status" visa classification ("U Visa") for noncitizen victims of qualifying crimes who cooperate with law enforcement investigations of those crimes. 8 U.S.C. § 1101(a)(15)(U). Acquiring a U Visa enables the noncitizen victim and

1

qualifying family members to receive temporary immigration benefits. U.S. Citizenship & Immigra. Servs., *Victims of Criminal Activity: U Nonimmigrant Status*, https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status. When DHS grants a noncitizen U Visa nonimmigrant status, it provides the person with employment authorization documents ("EADs") pursuant to 8 U.S.C. § 1184(p)(3)(B). *See also* 8 C.F.R. § 214.14(c)(7). Congress limited the number of U Visas that can be awarded to 10,000 per fiscal year. 8 U.S.C. § 1184(p)(2). Individuals who, due solely to the 10,000-visa cap, are not granted a U Visa are placed on a waiting list. 8 C.F.R. § 214.14(d)(2). Petitioners on the waiting list receive final adjudication for their U visas in future years in accordance with the statutory cap, with the oldest petitions receiving priority. *Id.*; U.S. Citizenship & Immigr. Servs., Policy Manual Vol. 3, Part C, Ch. 7. While a petitioner is on the waiting list, "USCIS will grant deferred action or parole" to such petitioner and "in its discretion, may authorize employment" for such petitioner. 8 C.F.R. § 214.14(d)(2).

Separately, since June 2021, the Secretary of Homeland Security "may grant work authorization to any alien who has a pending, bona fide [U Visa petition]" via a two-step process.[1] 8 U.S.C. § 1184(p)(6); U.S. Citizenship & Immigr. Servs., Policy Manual, Volume 3, Part C, Chapter 5 – Bona Fide Determination Process, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (hereinafter USCIS Policy Manuel Ch. 5). At step one, DHS makes a "Bona Fide Determination" (BFD) regarding the petitioner's U Visa status. At step two, DHS then assesses "whether the petitioner poses a risk to national security or public safety and otherwise merits a

---

[1] According to the USCIS website, "[t]he bona fide determination process was created with the goal of conducting initial reviews of U nonimmigrant status petitions more efficiently and providing eligible victims of qualifying crimes with employment authorization and deferred action while they await a final adjudication of their petition for U nonimmigrant status under the annual statutory cap." https://www.uscis.gov/records/electronic-reading-room/national-engagement-u-visa-and-bona-fide-determination-process-frequently-asked-questions.

2

favorable exercise of discretion." USCIS Policy Manuel Ch. 5. If DHS makes a favorable determination at this second step, then it will provide the petitioner EAD and deferred action. *Id.* This two-step process is known as the BFD Process. *Id.*

**II.  Facts of Lobatos's Petition**

Plaintiffs seek to compel DHS to (1) adjudicate the Petition, (2) complete the BFD Process or, alternatively, (3) place Plaintiffs on the waiting list.

The relevant facts, taken from Plaintiffs' Complaint, are as follows: In October 2023, Plaintiff Jose Aceves Lobatos was a victim of felonious assault and armed robbery in Chicago, Illinois. (Dkt. 1 ¶ 24). He was driving with a coworker when two unknown men approached his vehicle with guns and demanded money. (*Id.*) Lobatos obtained law enforcement certification from the police department in Chicago, Illinois that he cooperated with law enforcement to the best of his ability. (*Id.* ¶ 25). On February 26, 2024, Lobatos filed Form I-918, Petition for U Nonimmigrant Status with the U.S. Department of Homeland Security and U.S. Citizenship & Immigration Services (USCIS). (*Id.* ¶ 26). He included his wife, Plaintiff Angeles Sanchez Rubio as a derivative (Form I-918A), qualifying family member in his Petition. (*Id.*) Lobatos's U Visa Petition was accorded receipt number EAC2412550205. (*Id.* ¶ 27). His Petition has been pending for 14 months. (*Id.* ¶ 26).

Since submitting the Petition for U nonimmigrant status, Lobatos has inquired multiple times regarding its adjudication status. (*Id.* ¶ 27). To date, Lobatos and Rubio have been informed only that their case is still being processed or under further review. (*Id.* ¶ 28). Plaintiffs have received no communication regarding final adjudication of the petition, nor have they been instructed to provide any further information or documentation to USCIS. (*Id.* ¶ 30).

3

Lobatos and Rubio request that the Court compel Defendants and those acting under them to perform their duty or duties to adjudicate the Petition for U Nonimmigrant Status or else place them on deferred action. (Dkt. 1 at 9). Lobatos and Rubio also request the Court to compel Defendants to perform their duties to adjudicate the applications for work authorization. (*Id.* at 9–10).

## DISCUSSION

Secretary Noem makes three discrete arguments in her Motion to Dismiss. (Dkt. 7). First, the Secretary argues that the Court lacks subject-matter jurisdiction under the Immigration & Nationality Act ("INA") to review U Visa Petitions. (*Id.* at 6). Second, the Secretary contends that even if the Court has jurisdiction, Plaintiffs fail to meet the "unreasonable delay" standard under the APA. (*Id.* at 8). Finally, she claims that Lobatos and Rubio's mandamus claim also fails because Plaintiffs have no right to adjudication within a certain timeframe. (*Id.* at 11).

### I. Subject Matter Jurisdiction Over Adjudicating U Visa Petition

#### a. The Parties' Positions

The Secretary first argues that the Court should dismiss Plaintiffs' request for the USCIS to expedite its decision over whether to grant them work authorization, which would include completing the BFD Process, because the Court lacks subject-matter jurisdiction. (*Id.* at 6). Rule 12(b)(1) requires the Court to dismiss a claim if it does not have subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Courts resolving Rule 12(b)(1) challenges employ the same "plausibility" standard used to evaluate Rule 12(b)(6) motions to dismiss. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). All well-pleaded facts alleged in the complaint are considered true, and all reasonable inferences are drawn in plaintiffs' favor. *Gociman v. Loyola Univ. Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). Further, "[t]he party invoking [ ] jurisdiction . . . bears the burden of showing

4

its existence." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). In determining whether subject-matter jurisdiction exists, courts may look beyond the jurisdictional allegations in the complaint. *See CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000).

To meet their burden, Plaintiffs first point to 5 U.S.C. § 706(1) of the APA, which provides that courts may "compel agency action unlawfully withheld or unreasonably delayed." The APA, however, does not apply where a relevant statute "precludes judicial review" or where a plaintiff challenges a discretionary agency action. *Nobles v. Noem*, No. 24 CV 9473, 2025 WL 860364, at *3 (N.D. Ill. Mar. 19, 2025) (explaining that Section 1252(a)(2)(B)(ii) bars jurisdiction for discretionary actions, which are otherwise justiciable under the APA); *Boldt v. Jaddou*, No. 22 C 2827, 2023 WL 355171, at *3 (N.D. Ill. Jan. 23, 2023). Moreover, though there is a canon of construction "favoring judicial review of administrative action," *Kucana v. Holder*, 558 U.S. 233, 249 (2010), a court may lack jurisdiction where "clear and convincing" evidence demonstrates congressional intent to preclude judicial review. *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)

Here, the question of subject-matter jurisdiction turns on the parties' disagreement over the proper application of 8 U.S.C. § 1252(a)(2)(B)(ii) of the INA. Section 1252(a)(2)(B)(ii) provides:

> (B) Denials of discretionary relief – Notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review—
>
>> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B). Put differently, to trigger § 1252(a)(2)(B)(ii)'s jurisdictional bar, there must be: (1) a decision or action by the Attorney General or the Secretary of Homeland Security

5

and (2) statutorily specified discretion to make that decision or take that action under Subchapter II of Chapter 12 of Title 8 (8 U.S.C. §§ 1151–1381). *Kucana v. Holder*, 558 U.S. 233, 253 (2010) (Alito, J., concurring) ("The phrase 'under this subchapter' refers to Subchapter II of Chapter 12 of Title 8, 8 U.S.C. §§ 1151–1381 . . . . ").

Though the statute falls under Subchapter II, the parties disagree over the second element—namely, whether the statute, which gives the Secretary of Homeland Security discretion to grant work authorization, impliedly also gives her discretion over the BFD Process as well. The statute in question, 8 U.S.C. § 1184(p)(6), states:

> The Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title.

(emphasis added)

While deciding to grant work authorization is certainly discretionary, *L.D.G. v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014) ("[t]he decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Homeland Security"), the Secretary argues that § 1184(p)(6)'s plain language shows that the BFD Process—which USCIS determines as an antecedent to its decision of whether to grant work authorization—is *also* "discretionary." (Dkt. 7 at 6). Accepting this interpretation means that § 1252(a)(2)(B)(ii) bars the Court from compelling USCIS to adjudicate the Plaintiff's Petition. (*Id.*) To support this claim, the Secretary cites Congress's use of the word "may" in the U Visa statute, 8 U.S.C. § 1184(p)(6), which she argues shows that the jurisdictional bar applies. (Dkt. 7 at 6–8); *Uranga v. USCIS*, 490 F. Supp. 3d 86, 99 (D.D.C. 2020) (finding that the phrase "may grant" in § 1184(p)(6) means USCIS has discretion over whether to grant EAD); *see also Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024) (use of the word "may" connotes discretion in adjustment of status context). In the Secretary's view, as

6

an antecedent to determining work authorization status for aliens, the BFD Process is also discretionary and therefore, outside the court's purview under § 1252(a)(2)(B)(ii)'s jurisdictional bar. (Dkt. 12 at 7).

In contrast, Lobatos and Rubio argue that § 1252(a)(2)(B)(ii) applies more narrowly. They do not deny that the INA provides the Secretary with discretion to grant work authorization. (Dkt 11 at 4–5). Plaintiffs contend, however, that while granting work authorization is discretionary, the second half of § 1184(p)(6) shows that completing the BFD Process is not discretionary. *See* 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien *who has a pending, bona fide application* for nonimmigrant status under section 1101(a)(15)(U) of this title.") (emphasis added). In other words, Lobatos and Rubio argue that the Secretary overstates the power of the word "may," in the context of this statute. (Dkt. 11 at 4). Therefore, in their view, § 1252(a)(2)(B)(ii) does not preclude the Court from compelling USCIS to adjudicate their claims. (Dkt. 11 at 4–5).

**b. Analysis**

The Court finds that it lacks subject-matter jurisdiction to evaluate whether USCIS unreasonably delayed in ruling on Plaintiffs' U Visa Petition.

To start, generally "the power of the federal courts is severely limited in the areas of immigration and regulation of aliens." *Hampton v. Mow Sun Wong*, 426 U.S. 88, 117 (1976) (Rehnquist J., dissenting); *Omorhienrhien v. Barr*, 952 F.3d 906, 909 (7th Cir. 2020) ("Congress has imposed tight restraints on our authority to review discretionary immigration decisions, generally removing them from our jurisdiction.") (Citing 8 U.S.C. § 1252(a)(2)(B)(ii)); *see also Britkovyy v. Mayorkas*, 60 F.4th 1024, 1027 (7th Cir. 2023) ("Congress has sharply limited judicial review in the immigration context."). More importantly, the jurisdictional statute at issue shows

congressional intent to insulate "any" of the Homeland Security Secretary's discretionary "decision[s] or action[s]" from judicial review. 8 U.S.C. § 1252(a)(2)(B)(ii). Because the BFD Process is a predicate to the work authorization decision, which 8 U.S.C. § 1184(p)(6) undoubtedly gives the Secretary clear discretion over (i.e., the Secretary "may grant"), this falls under § 1252(a)(2)(B)(ii)'s jurisdictional bar.

Though neither party points to, nor can the Court find, any binding Seventh Circuit caselaw which directly addresses this question, the Supreme Court's decision in *Patel v. Garland* supports the Secretary's position. 596 U.S. 328 (2022). In *Patel*, USCIS denied the petitioner's adjustment of status application (a process by which USCIS may change a noncitizen's status in the United States from illegal to legal, permanent resident) because it determined the petitioner had misrepresented that he already was a lawful resident on a different application for a Georgia license. *Id.* at 333. The Court considered whether 8 U.S.C § 1252(a)(2)(B)(i) (the portion of the statute, which directly precedes the text, which is at issue here) precludes judicial review of "factual findings that underlie a denial of relief" and concluded that it does. *Patel*, 596 U.S. at 331. The Court explained that the word "any" in the statutory text "any judgment" has an "expansive meaning," which included judgments of "whatever kind." *Id.* at 338. Relying, in part, on the legal meaning of "any," the Court concluded that § 1252(a)(2)(B)(i) bars review of questions of fact in the plaintiff's application process.

Here, the relevant statute at issue states: "*any other decision or action* of the Attorney General or the Secretary of Homeland Security . . . " which falls under their "discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Like § 1252(a)(2)(B)(i), which begins with the word "any," § 1252(a)(2)(B)(ii) also starts with "any," evincing parallel congressional intent for the statute to cover "whatever kind" of discretionary decisions within the Secretary's purview under

8

Subchapter II. As part of the Secretary's discretion to grant work authorization, the BFD Process—an antecedent to the Secretary's ultimate judgment of whether to grant work authorization—also is covered. *See Doe 1 v. Jaddou*, 2025 WL 327368, at *6 (D. Md. Jan. 29, 2025) ("the APA claims fails because Plaintiffs cannot show that an agency has failed to take a discrete agency action that it is *required* to take") (emphasis added) (cleaned up). This rationale accords with the Fourth Circuit's understanding of § 1184(p)(6)—specifically that "the term 'pending, bona fide application' does not transform the discretionary 'may' into a mandatory 'shall.' *Gonzalez v. Cuccinelli*, 985 F.3d 357, 371 (4th Cir. 2021) (citing 8 U.S.C. § 1184(p)(6)); *see also Chaudhari v. Mayorkas*, 2024 WL 5465720, at *3 (N.D. Ill. Dec. 16, 2024) (holding that agency discretion means consideration of every work authorization is not required).

Furthermore, like *Patel*, where the Court determined it did not have jurisdiction under § 1252(a)(2)(B)(i) to review USCIS's conclusion that the petitioner had lied on his adjustment status application, the BFD process involved similar fact finding. The USCIS Policy Manual underscores the discretionary nature of the BFD Process. It states that "USCIS determines whether a petition is bona fide based on the petitioner's compliance with initial evidence requirements and successful completion of background checks." U.S. Citizenship & Immigr. Servs., Policy Manual Vol. 3, Part C, Ch. 5. This requires USCIS to review the petitioner's personal statement of victimization describing the circumstances. *Id.* Like § 1252(a)(2)(B)(i), which the *Patel* Court said evinced sufficiently clear congressional intent to overcome the presumption of judicial review, § 1252(a)(2)(B)(ii) is similarly unambiguous. The statute bars judicial review.

In another case, *Soni v. Jaddou*, in which an immigrant plaintiff sought to compel USCIS to rule on his petition for waiver of a statutory waiting period to apply for an immigration visa, the Seventh Circuit affirmed a district court's decision to dismiss for lack of subject-matter

9

jurisdiction. 103 F.4th 1271, 1272 (7th Cir. 2024). Though *Soni* dealt with 8 U.S.C. § 1182(a)(9)(B)(v) not § 1252(a)(2)(B)(ii), the Court of Appeals emphasized language found in both statutes in reaching its decision. The court highlighted how § 1182 precludes judicial review of any "decision *or action regarding*" a waiver. *Soni*, 103 F.4th at 1273 (emphasis in the original). The Court stressed that an "action" can mean delaying in adjudicating one's application. *Id.* Consequently, the Court held that the Secretary's "action" fell under this umbrella, and therefore, the Court lacked jurisdiction. *Id.*

The reasoning in *Soni* and *Patel* applies with equal force here given § 1252's language that similarly precludes judicial review of all of the Secretary's discretionary "decision[s] or action[s]." The Supreme Court and Seventh Circuit's expansive reading of § 1252(a)(2)(B)(i) and § 1182(a)(9)(B)(v) counsels the Court to read § 1252(a)(2)(B)(ii) as similarly expansive. No doubt § 1184(p)(6) gives the Secretary of Homeland Security discretion over whether to grant work authorization. USCIS implemented the BFD Process to help effectuate this discretionary action. USCIS Policy Manuel Ch. 5. As the Court explained in *Soni* in the application for waiver context, USCIS's timing in adjudicating an application is properly considered an "action." 103 F.4th at 1273. Further, there is "no clear mandate requiring USCIS to act within a certain timeframe" in its BFD Process. *Garcia v. United States Citizenship & Immigr. Servs.*, 760 F. Supp. 3d 671, 673 (N.D. Ill. 2024) ("numerous federal appeals courts have interpreted § 1252(a)(2)(B)(ii) as precluding judicial review not just of the Executive Branch's discretionary decision, but of the process and timing underlying that decision, too"); *see also Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) (finding that the timing of when the Attorney General makes an adjustment of status decision is discretionary). This means that when USCIS completes the BFD Process falls under agency discretion as a predicate determination prior to the agency's final decision on work

10

authorization. As a "discretionary action . . . decision or action of the . . . Secretary of Homeland Security . . . " 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review.

Lobatos and Rubio argue the jurisdictional bar does not apply, citing to *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, a Sixth Circuit case in which the Court held that § 1252(a)(2)(B)(ii) does not strip courts of subject matter jurisdiction in this circumstance. 25 F.4th 430, 444 (6th Cir. 2022); (Dkt. 11 at 3). But even in that case, the appeals court acknowledged that "§ 1184(p)(6) might be read another way." *Id.*; *see Gonzalez*, 985 at 371 (4th Cir. 2021) (writing that the "term pending, bona fide application merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication") (internal quotations omitted). Furthermore, *Barrios Garcia* was decided prior to *Patel* and *Soni*, cases which signaled more expansive readings of similar statutes addressing whether the Attorney General or DHS Secretary's decision or judgment is discretionary. As the Fourth Circuit noted in *Gonzalez*: in "establishing the U-Visa program, Congress has shown that it knows how to require an agency to implement a provision and adjudicate claims, especially within a certain timeframe. Yet Congress did not do so when it granted the Secretary the authority to provide work authorizations." *Gonzalez*, 985 F.3d at 366.

Plaintiffs also argue that an agency may not insulate itself from judicial review by creating regulation, which makes a mandatory act discretionary. (Dkt. 11 at 5). While this true, *Kucana v. Holder*, 558 U.S. 233, 237 (2010), Congress—as opposed to regulation—clearly gave the Secretary discretion via 8 U.S.C § 1184(p)(6), the statute at issue here. *Bouarfa v. Mayorkas*, 604 U.S. 6, 17 (2024) (explaining that § 1252(a)(2)(B)(ii) bars judicial review of decisions "made discretionary *by legislation*.") (emphasis in the original). While there are regulations concerning the BFD Process, Congress also gave the Secretary discretion over the process via statute when it passed § 1184(p)(6). This undermines Plaintiffs' argument that the agency manufactured its

11

discretion by passing regulations. *See Thigulla v. Jaddou*, 94 F.4th 770, 776 (8th Cir. 2024) ("If the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable.").

For these reasons, the Court concludes that § 1252(a)(2)(B)(ii) bars it from exercising jurisdiction over Lobatos and Rubio's request for the Court to compel the DHS Secretary and USCIS Director to adjudicate the petition. (Dkt. 1 at 9). Because the BFD Process is an antecedent decision, which USCIS must make prior to determining work authorization status, the Court also does not have subject matter jurisdiction over this request.

Because the Court dismisses the claim with prejudice for lack of subject matter jurisdiction, the Court need not consider the merits of Plaintiffs' claims.

### II. Alternative Claim for Waitlist Determination

As for Plaintiffs' request that the Court compel USCIS to complete the waitlist determination (WLD), Defendants argue that the claim for relief is unripe. (Dkt. 12 at 10). The ripeness doctrine "arises out of [Article III's] case or controversy requirement," and its "underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements." *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019) (internal citations omitted). If a claim is unripe, the Court must dismiss it because "[f]ederal courts lack jurisdiction to consider an unripe claim." *Kathrein v. City of Evanston*, 636 F.3d 906, 915 (7th Cir. 2011).

The Court dismisses Lobatos and Rubio's alternative WLD claim because the request is unripe. *Id.* For a claim to be a ripe, it must not depend on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). The USCIS has yet to make a decision

as to work authorization under 8 U.S.C. § 1184(p)(6). If USCIS authorizes Plaintiffs to work, they would no longer have to seek WLD. *See* 8 C.F.R. § 214.14(d)(2) ("eligible petitioners who, due solely to the cap, *are not granted U-1 nonimmigrant status* must be placed on a waiting list") (emphasis added). Therefore, it would be premature to place Plaintiffs on a waiting list, while their petition for work authorization is still pending.

Because the WLD claim is "contingent" on the work authorization decision, the claim is unripe and the Court dismisses this claim. *Trump*, 592 U.S. at 131.

### III. Mandamus Claim

Separately, under 28 U.S.C. § 1361, Defendants move to dismiss Lobatos and Rubio's request that the Court issue a writ of mandamus to compel USCIS to adjudicate the Petition for failure to state a claim. (Dkt. 1 ¶ 2). To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

District courts have jurisdiction to issue a writ of mandamus to compel an agency to perform a duty owed to a plaintiff. 28 U.S.C. § 1361; *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002). "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (cleaned up).

In *Calderon-Ramirez*, the Seventh Circuit explained that mandamus is inappropriate absent facts differentiating a plaintiff's situation from that of other visa petitioners with longer delays. 877 F.3d at 275. In holding that it would not compel USCIS to place him on the waiting list, the Court explained that "[w]ith nothing in the record to suggest his wait time has been any more unreasonable than other petitioners waiting in the same line, we have no reason to grant mandamus relief." *Id.* at 276.

The same is true here. Lobatos and Rubio provide no facts to contextualize their position in line relative to other petitioners waiting for their claims. (*See* Dkt. 1). The only relevant facts that Plaintiffs provide is that Lobatos has been waiting for 14 months. Without more details, Plaintiffs' request that the Court issue of a writ of mandamus is denied without prejudice.

## **CONCLUSION**

For the forgoing reasons, the Court grants Defendants' Motion to Dismiss [6]. Plaintiffs may refile their mandamus claim.

_____
Virginia M. Kendall
United States District Judge

Date: June 11, 2025